# Horine *v.* Luria, Appellant.

*Bankruptcy—Preference—Knowledge of insolvency by a preferred creditor—Evidence.*

1. In an action by a trustee in bankruptcy to recover the value of property transferred to the defendants as creditors, by the bankrupt within four months prior to filing the petition, the plaintiff will be permitted to prove declarations made shortly after the transfer, by one of the defendants, tending to show that the defendants knew at the time the transfer was made that the bankrupt was insolvent.

2. In such a case where it appears that the property transferred was book accounts, and the defendants testify, although contradicted at every point, that the transfer was merely made as security for future advances to enable the assignor to carry on his business, the case is for the jury, and a verdict and judgment for the trustee will be affirmed.

Argued Nov. 13, 1911. Appeal, No. 283, Oct. T., 1910, by defendants, from judgment of C. P. Berks Co., March Term, 1909, No. 29, on verdict for plaintiff in case of Paul C. Horine, Trustee in Bankruptcy of the Estate of Wayne J. Yerger, trading as Hercules Brass Foundry, Bankrupt, v. Max Luria, Alexander Luria and Max Silberman, trading as Luria Brothers & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit by a trustee in bankruptcy against a preferred creditor of the bankrupt. Before STEVENS, J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were (1) ruling on evidence referred to in the opinion of the Superior Court, and (3) in refusing binding instructions for defendants.

*Green & Green* and *C. H. Ruhl*, for appellants.

*E. H. Deysher*, with him *John H. Bridenbaugh*, for appellee, cited: Crawford v. Rumpf, 205 Pa. 154; Gamble v.

Elkin, 205 Pa. 226; Tredway v. Kaufman, 21 Pa. Superior
Ct. 256.

OPINION BY PORTER, J., March 1, 1912:

This is an action by a trustee in bankruptcy to recover
the value of property transferred by the bankrupt, within
four months prior to filing the petition, to these defend-
ants, who were among his creditors, as a preference; the
plaintiff alleging that Yerger was at the time of such
transfer insolvent and that the defendants received the
preference knowing or having reasonable cause to believe
that Yerger was insolvent and that he intended by such
transfer to· give a preference.   The plaintiff recovered a
verdict and judgment in the court below and the defend-
ants appeal.

One of the questions material to the right of plaintiff
to recover was whether Luria Bros. & Co. knew of the
insolvency of Yerger at the time he transferred the prop-
erty to them.   The plaintiff having called Yerger, the
bankrupt, who testified that one of the members of the
defendant firm having examined his property, the plant, the
book accounts which were due him and the bills which he
owed to the defendants and others had then told him that
he was insolvent to the extent of between $2,000 and
$2,500; this being a few days prior to the date of the trans-
fer of the property to the defendants.   The plaintiff by
way of corroborating Yerger, called a witness who testified
that a few days after the transfer had been made he had a
conversation with another member of the defendant firm
and proposed to show what that conversation was; the
purpose of the offer being asked, counsel for plaintiff thus
stated it: "The purpose is to show that the defendants
knew and said they knew all about Yerger's financial
standing."   The offer being objected to, the objection was
overruled by the court and defendants took an exception,
upon which the first specification of error is founded.   This
offer was not to show that the witness had, after the
transfer, told the defendants something about the financial

condition of Yerger; it was a distinct offer to prove what one of the defendants had said about the financial condition of Yerger shortly after the transfer of the property had been made. An offer to prove that the witness had, after the transfer, told the defendants that Yerger was insolvent, would not have been admissible, for it would tend to throw no light upon what the actual condition of their minds was at the time of the transfer, but what one of the defendants said concerning the financial condition of Yerger about the time of the transaction, whether before or after, was proper to be received in determining the question whether they knew Yerger to be insolvent at the date of the transfer. If such a declaration of a defendant made shortly after the transfer is founded upon knowledge which he had acquired subsequently to accepting the transfer, that is for him to explain. The testimony received under this exception was that one of the defendants had, within a few days after the transfer, the conversation being with regard to Yerger's financial condition, said: "You don't need to tell me anything about him, do you think we are sleeping?" This testimony may not have done the defendants much harm, but it was proper to be considered for what it was worth, as corroborating the testimony of Yerger, that the defendant firm were acquainted with Yerger's financial condition. The first specification of error is overruled.

The property which the bankrupt transferred to the defendants consisted of all the book accounts which he held against solvent parties, amounting to $1,424.50, and there is nothing in the evidence indicating that they were not worth their face; in fact all the evidence in the case indicates that they were all good. The bankrupt was at that time indebted to the defendant firm in the sum of $1,016.68, of which sum $609.65 was upon an open book account, and the balance of $407.03 consisted of a note, with an indorser, which the bankrupt had given to the defendants in the preceding August and which was not yet due. Yerger testified that in the agreement which was

made with the defendants it was covenanted that his note for $407.03, held by the defendants, should be treated as a part of his present indebtedness to them, and that when the note came due the defendants would lift it. He testified that he transferred to the defendants good book accounts amounting to $1,424.50, that the transfer was absolute, and that it was agreed at the time that the defendants should take the accounts at their face, and that the sum of $1,424.50 which the accounts involved should be applied to the payment of his entire indebtedness to them, including the note, amounting to $1,016.68, thus leaving a balance of $407.82 due Yerger from the defendants. He testified that it was at the same time agreed that the defendants should pay him this balance of $407.82 in metal or cash, and would in the future purchase accounts which he might have for goods sold by him to his customers, and pay him therefor in metal or cash; and that in pursuance of this agreement the book accounts amounting to $1,424.50 were assigned and transferred to the defendants on September 16, 1908. He testified that in pursuance of this agreement he assigned and transferred to the defendants, subsequently to September 16, 1908, book accounts amounting in the aggregate to $3,117.31, which assignments were accepted by the defendants, which added to the balance of $407.82, remaining due him upon the assignment of September 16, entitled him to a credit in his account with the defendants of $3,525.13. He further testified that the defendants had, upon these transactions subsequently to September 16, made payments to him in cash and metal, from time to time, giving the amounts and dates of said payments, the last of which was, cash $32.01, on December 4, 1908. He testified that on the date last mentioned he made a settlement with Alexander Luria, one of the defendant firm, of all transactions which he had had with the firm subsequently to September 16, and that it was agreed and understood that the check for $32.01, which was given on that day, was in full of the balance due him on those transactions,

and closed the account between them.  The member of the defendant firm with whom the bankrupt dealt in these matters contradicted practically all of the testimony of this witness.  He testified that the assignment of book accounts made by Yerger to the defendant firm on September 16 and all those subsequently made were not made for the purpose of vesting title to those claims in the defendants, that the defendants were to collect the claims and account for them to Yerger, that at the time the first assignment was made there was nothing said about the indebtedness due from Yerger to the defendants, that that assignment and all those afterwards made were made simply as a security for such advancements as the defendants might subsequently make to Yerger, and that they had subsequently furnished him with cash and metal to an amount in excess of all that they had been able to collect upon the claims.  The only material fact in the case not disputed was that Yerger had made the various assignments of accounts alleged in his testimony; the circumstances in which and purpose for which the assignments were made were all disputed, under the evidence. The learned trial judge left these questions of fact to the jury under instructions of which the defendants have no ground to complain.

The defendants presented to the court the following prayer for instruction to the jury: "If the jury should find that a preference was intended, when the accounts were transferred and assigned to the defendants, and the defendants subsequently extended further credit to Yerger for the purpose of carrying on his business, and the amount of credit so extended and remaining unpaid and unsecured on January 11, 1909, exceeds the value of the securities which the defendants subsequently received from Yerger, such new credit may be set off against the demand of the plaintiff in this case."  This point the court affirmed. The appellants now argue that although they had the benefit of the affirmance of this point the court should have instructed the jury that under the evidence the

money and metal furnished by defendants to Yerger, after September 16, so greatly exceeded the value of what they had received from him, as to wipe out the entire amount of the preference which they had received on September 16. They seem in this argument to lose sight of the fact that there was a balance due Yerger on September 16 of $407.82, being the excess of the value of the property which he had transferred to them over and above all his indebtedness at that time, for which amount defendants had subsequently agreed to pay him in metal or cash. They also lose sight of the fact that Yerger testified, in substance, that the assignments of accounts made after September 16 were not made merely as a security for future advances, but were absolute bargains and sales of such accounts, and that defendants were to pay him the amount of such accounts, in metal or cash. The defendants had, according to Yeager's testimony in the transaction of September 16 treated his note for $407.03, which they held, as a part of his indebtedness, it was necessary to include it in order to make up the sum of $1,016.68, and that they agreed to lift that note when it became due. If his testimony was true, the defendants actually received payment of that note, and if they had discounted it it was their business to take care of it when it came due. The defendants had produced a witness who testified that about $400 of the accounts which Yerger had assigned subsequently to September 16 had not yet been collected by the defendants, but they produced no evidence tending to establish that the parties against whom they held the claims which had been assigned to them were not solvent or that the claims were not worth their face value and they made no offer to reassign those claims to the assignee. They could not assert, as against this assignee, that they had returned to the estate the amount of the preference, and yet withhold from the estate a security which might be fully equal in value to the property which they had thus returned. But, waiving this principle, if the testimony of Yerger was true these defendants had

not returned anything to the estate. The case was for the jury and all the specifications of error are overruled.

The judgment is affirmed.